IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARSEAN WATTERS, | ) | CASE NO. 1:20 CV 1079 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| STATE FARM FIRE & CASUALTY CO., | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Motion for Partial Summary Judgment filed by Defendant, State Farm Fire & Casualty Co. ("State Farm"). (Docket #16.) Pursuant to Fed. R. Civ. P. 56, State Farm seeks summary judgment as to Plaintiff, Marsean Watters' claims for Lack of Good Faith (Count II of the Complaint) and punitive damages.

I.  **Summary of Facts.**[1]

On November 26, 2018, Mr. Watters applied for a Personal Articles Insurance Policy ("the Policy") with State Farm to insure five pieces of jewelry. The jewelry consisted of an 18K yellow gold Rolex watch valued at $19,500; a 14K diamond bracelet valued at $17,500; a 10K yellow gold diamond chain with 14K diamond cross valued at $22,000; a 14k yellow gold

---

[1] The facts as stated in this Memorandum Opinion and Order are taken from the Parties' submissions. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving Party.

invisible set diamond cross with 10K diamond-cut bead and chain valued at $9,500; and, a 14K yellow gold Maybach logo diamond pendant with 14K yellow gold solid diamond-cut rope chain valued at $28,080. All of the jewelry was insured on the application date, except for the Rolex watch, which was not insured until February 5, 2019 due to underwriting issues. (Affidavit of Frank Piazza ("Piazza Affidavit") at Paragraphs 4-5.)

On April 19, 2019, two and half months after the Rolex was added to the Policy, Mr. Watters alleged he was robbed, at gunpoint, of all five pieces of jewelry while at a gas station. (Deposition of Marsean Watters at p. 37.) Mr. Watters filed a Police Report that same day.

On April 20, 2019, Mr. Watters filed a theft claim with State Farm. Because the loss was considered questionable under the National Insurance Crime Bureau's indicators of potential fraud – including the fact that the loss occurred shortly after coverage took effect – the claim was transferred to State Farm Special Investigative Unit Claim Specialist Frank Piazza. (Deposition of Frank Piazza ("Piazza Depo.") at pp. 8-9.) On June 19, 2019, Mr. Watters appeared for an Examination Under Oath at the request of Mr. Piazza. (Piazza Affidavit at Paragraph 7.) The examination was conducted by attorney Joe Ritzler. (Id.)

On July 1, 2019, Mr. Piazza received an anonymous call from a woman (the "Anonymous Caller") who claimed she saw Mr. Watters wearing the Maybach logo necklace at a nightclub the weekend before. (Piazza Depo. at p. 16.) On July 2, 2019, Mr. Piazza received an email from the National Insurance Crime Bureau indicating that an anonymous caller reported Mr. Watters for insurance fraud, stating that she saw Mr. Watters at a party and he was wearing the jewelry he alleged had been stolen. (Piazza Affidavit at Paragraphs 8-9.) On July 10, 2019, Mr. Piazza received photographs from the Anonymous Caller, taken at a nightclub. After receiving the photos, Mr. Piazza asked that Mr. Watters submit to a second Examination Under Oath. (Piazza

Affidavit at Paragraph 10.) During his deposition, Mr. Piazza testified that he did not take further action to investigate the identity or motives of the Anonymous Caller. (Piazza Depo. at pp. 18-21.)

Mr. Ritzer's office then discovered an Instagram post, dated June 3, 2019, in which Mr. Watters was wearing the Maybach logo necklace. Mr. Watters admitted that he was the individual in the photo wearing the necklace, but denied the photo was taken after April 19, 2019. State Farm reviewed additional Instagram videos, posted after the alleged theft date, showing Mr. Watters wearing various pieces of the allegedly-stolen jewelry. (Piazza Affidavit at Paragraph 14.)

Considering all of the evidence gathered during its investigation, State Farm determined that Mr. Watters was wearing the Maybach logo necklace after the alleged theft; that Mr. Watters made a material misrepresentation in reporting the necklace as stolen; and, that Mr. Watters violated the "Concealment or Fraud" provision of the Policy. (Piazza Affidavit at Paragraph 15.) State Farm denied Mr. Watters' claim and voided the Policy. (Id. at Paragraphs 15-16.)

## II. Procedural History.

### A. Mr. Watters' Complaint

Mr. Watters originally filed this lawsuit in the Cuyahoga County Court of Common Pleas on April 14, 2020, Case No. 20 CV 931853. On May 18, 2020, State Farm removed the case to this Court. Mr. Watters alleges that State Farm breached of the terms of the Policy by failing to pay him for amounts allegedly due, totaling $96,580.00 (Count I). (Complaint at Paragraphs 13-14.) Mr. Watters also asserts a claim for Lack of Good Faith (Count II) and seeks to recover compensatory and punitive damages.

B.   **State Farm's Motion for Summary Judgment**

On June 29, 2021, State Farm filed its Motion for Partial Summary Judgment, seeking summary judgment only as to Mr. Watters' claims for Lack of Good Faith (Count II) and punitive damages. State Farm does not seek summary judgment as to Mr. Watters' Breach of Contract Claim (Count I), acknowledging that there may be a question of fact as to whether Mr. Watters' was in fact the victim of a robbery.

On September 1, 2021, Mr. Watters filed his Brief in Opposition. (Docket #23.) Mr. Watters argues that State Farm failed to conduct an adequate investigation into the alleged robbery; conducted a biased investigation by "using an anonymous source and refusing to investigate further" as to the date certain photographs were taken; and, "demonstrated malice, aggravated or egregious fraud, oppression, or insult towards" him by "refusing to honor the contract between the two parties." (Docket #23 at p. 3.) Mr. Watters argues that State Farm breached its duty to act in good faith in the handling of his claim and that the testimony of Mr. Piazza is sufficient to establish that State Farm "acted with malice, fraud or insult" toward Mr. Watters, entitling him to punitive damages.

State Farm filed a Reply Brief on September 15, 2021. (Docket #24.) State Farm argues that it did not have to be "correct" in its denial of Mr. Watters' claim under the Policy, only that it must have had a reasonable justification for the denial; that its decision was neither arbitrary nor capricious; and, at the very least, its decision was "fairly debatable." State Farm cites testimony from Mr. Piazza that he did not attempt to investigate the identity of the anonymous caller because she had "expressed fear of retribution and retaliation" and, that regardless, the decision to deny Mr. Watters' claim and cancel the Policy was based not only on the Anonymous Caller's tip, but also the temporal proximity between the alleged robbery and the claim; the fact

that Mr. Watters misrepresented where he had purchased one of the insured pieces, constituting a material misrepresentation in the presentment of the claim; that pictures of Mr. Watters found on his Instagram account never showed him wearing more than one or two articles of jewelry at a time and it would have been unusual for Mr. Watters to have been wearing all five pieces of jewelry (including three gold chains, with two diamond crosses and one Maybach logo pendent, a diamond bracelet and a Rolex watch) in a jogging suit, at the time of the alleged robbery; that a video on Instagram Live showed Mr. Watters wearing the jewelry after the alleged robbery; and, that in an Instagram Post dated June 3, 2019, Mr. Watters appears in a picture wearing the Maybach logo necklace.  State Farm asserts that it considered all of the evidence gathered during its investigation, which provided reasonable justification for the denial of Mr. Watters' claim, and that there is no evidence that State Farm acted with actual malice or committed aggravated fraud.

### III.   Summary Judgment Standard.

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 5(c).  The burden of showing the absence of any such "genuine dispute" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine [dispute] of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).  As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty*

-5-

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Id.* The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.

Determination of whether a dispute is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual [disputes] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

## IV. Discussion.

The Court has thoroughly and exhaustively reviewed the claims raised by Mr. Watters; State Farm's Motion for Summary Judgment; the briefing responsive thereto; and, all supporting documentation.

"An insurer has the duty to act in good faith in the handling and payment of the claims of

its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315, 1319 (Ohio 1983). "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554, 644 N.E.2d 397, 400 (Ohio 1994). "An insurer lacks reasonable justification when it denies an insured's claim in an arbitrary and capricious manner." *Barbour v. Household Life Ins. Co.*, Case No. 1:11 CV 110, 2012 U.S. Dist. LEXIS 46004 (N.D. Ohio April 2, 2012)(citing *Hoskins*, 452 N.E.2d at 1320). "However, denial of a claim may be reasonably justified when 'the claim was fairly debatable and the refusal is premised on either the status of the law at the time of the denial or the facts that gave rise to the claim.'" *Barbour*, 2012 U.S. Dist. LEXIS 46004, at *14 (quoting *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St. 3d 621, 630, 605 N.E.2d 935 (1992)).

Mr. Watters has failed to present evidence that State Farm's refusal to pay Mr. Watters' claim under the policy, when considering all of the information gathered during its investigation, was unreasonable. Mr. Watters' has failed to offer evidence sufficient to support a finding that State Farm acted in an arbitrary or capricious manner and, at the very least, the evidence demonstrates that, based on the information available to State Farm, Mr. Watters' claim under the Insurance Policy was fairly debatable. Furthermore, there is no evidence whatsoever that State Farm acted actual malice or committed aggravated fraud in its investigation and denial of Mr. Watters' claim. Accordingly, State Farm is entitled to summary judgment as to Mr. Watters' claims for Lack of Good Faith (Count II) and punitive damages.

## V.     Conclusion.

For the foregoing reasons, the Motion for Partial Summary Judgment filed by State Farm (Docket #16) is hereby granted. Stated Farm is entitled to summary judgment as to Count II of

the Complaint, Lack of Good Faith, and also as to Mr. Watters' claim for punitive damages.

Trial remains set for November 15, 2021 at 8:30 a.m..

IT IS SO ORDERED.

*Donald C. Nugent*
DONALD C. NUGENT
Senior United States District Judge

DATED: October 1, 2021